ON REHEARING
TYSON, Judge.
Robert W. Cumbie, through counsel, has filed an application for rehearing to which he attached a motion requesting an extension and that further facts be set forth pursuant to Rule 39(k), A.R.A.P.
Appellant’s counsel takes issue with this court’s statement of facts as set forth in its opinion dated November 24, 1987, in which a memo of this court which was circulated to the members of this court on February 19, 1987, and unanimously concurred in on March 4, 1987 at conference, wherein this cause was originally affirmed without opinion on March 10, 1987, is quoted.
Mobile City Police Officer Samuel M. Cochran, of the Narcotics and Vice Squad, testified at the motion to suppress hearing in this cause. His testimony in the cause leading up to the issuance of the search warrant by Judge Johnstone is as follows:
“Q. Officer, I show you what has been marked as State’s Exhibit 1. Can you identify that exhibit?
“A. Yes, sir, I can.
“Q. What is that exhibit?
“A. This is the search warrant affidavit that I prepared and presented to Judge Johnstone for a search warrant at 2854 Halls Mill Road, Mobile.
“Q. And who made up that document?
“A. I did.
“Q. And who did you make it up for?
“A. I presented it to Judge Johnstone, the affidavit for the search warrant.
“Q. And was that a judge in Mobile County?
“A. Yes, sir, he is.
“Q. And were you sworn in?
“A. Yes, sir, I was.
“Q. When did you make the affidavit? “A. On May the 6th of 1985.
“Q. And what facts did you relate to the Judge?
“A. That I’m Corporal Sam Cochran of the Mobile Police Department, Mobile, Alabama, currently assigned to the Narcotics Section. Within the last eight hours information was received from a source—
“THE COURT: Is all of that on the affidavit?
“THE WITNESS: Yes, sir, it is.
“THE COURT: Everything in there you swore to?
“THE WITNESS: Yes, sir, I did.
*1387 “Q. And did these facts pertain to Mobile County?
“A. Yes, sir, they did.
“Q. What address?
“A. 2854 Halls Mill Road here in Mobile.
“Q. And what was the source of the information on the affidavit?
“A. There were a number of sources, both anonymous and both confidentially known to me that had proven reliable in the past.
“Q. And how did you know the facts that you put down on the affidavit?
“A. The facts were called into the police department stating the information concerning Robert Cumbie, Steve Cumbie and Donnie Chastian. Those facts that were stated, some of which were verified to corroborate them, some of which were not, were unable to be completely verified, and then also facts presented in the affidavit were also known to me that I had received from a confidential reliable informant.
“Q. Is that information about the informant on the affidavit?
“A. It is.
“Q. Had you used that confidential informant before?
“A. Yes, sir, I had.
“Q. And what were the results?
“A. Two persons were arrested for drug violations and a seizure of controlled substances.
“Q. Now, the anonymous tips you talked about, what kind of anonymous tips were those?
“MR. BYRD: I would object, Your Honor, unless these are factors which were stated in the affidavit under oath. It’s irrelevant and immaterial.
“Q. Did you state the anonymous tips on the — in your affidavit?
“A. Yes, sir, I did.
“Q. Would you tell us about those anonymous — was that like crimestopper type information or how what was that?
“A. Yes, sir, they were crimestopper information and they were also — I think three were crimestoppers and two were just straight calls into the vice section. “Q. So, at least five anonymous calls you had received?
“A. Yes, sir. Over a period of some months that advised us of the involvement of Robert Cumbie, Steve Cumbie and Donnie Chastian in trafficking in controlled substances.
“Q. Now, Officer, based on those anonymous tips you stated in the affidavit and based on your confidential informant information stated in the affidavit, is there anything else on the affidavit that you can recall that you relied upon in obtaining the warrant?
“A. On the affidavit?
“Q. Right.
“A. In it also I state how we had previously executed a search warrant at the residence of Steve Cumbie, the known brother of Robert Cumbie, of approximately two blocks away and that we did in fact seize approximately two and a half ounces of cocaine and this was just a couple of months prior to this search warrant. It’s stated in here. And at that time there was also information indicating Robert’s involvement with that although he was not arrested because he was not present at the residence.
“Q. And what date was the search warrant issued?
“A. The search warrant was issued on May the 6th, 1985.
“Q. Who was the warrant issued to?
“A. Myself.
“Q. What address was the warrant issued for?
“A. 2854 Halls Mill Road.
“Q. When was the warrant executed?
“A. That same afternoon at 5:35 p.m.
“Q. Do you know who lived at that address?
“A. I do.
“Q. Who?
“A. Robert Cumbie.
“Q. And who executed the warrant?
*1388 “A. I did. Along with several other officers.
“Q. What other officers were involved if you can recall?
“A. Yes, sir. Myself, Corporal Eddie Carr, Corporal Terry Hicks, Alabama Bureau of Investigation Officers Ed Odom, also D.E.A. Agent Charlie Parks. I think also Agent Gary Etchin. And then there were some other uniformed officers that later came to the scene.
“Q. And what was seized at that address based on the search warrant you had obtained?
“MR. BYRD: Your Honor, I’ll object to the form of the question. I also think that gets a bit beyond the scope of a motion to suppress hearing.
“THE COURT: Overrule.
“A. Seized was a set of triple beam scales, a paper bag containing several plastic bags of green plant material, also contained unknown vial of pills, $3,971.00 in U.S. currency. There was documentation which were gas bills and power bills. A metal tool box that contained several plastic bags, these large ziplock plastic bags that had residue in them. A film container that had green plant material. Two small plastic bags containing white powder. Those items were seized pursuant to the warrant.
“Q. That’s an inventory list you’re reading from which is part of State’s Exhibit Number 1?
“A. Yes, sir, it is.
“Q. And were the items turned in for analysis?
“A. Yes, sir, they were.
“MR. JORDAN: That’s all we have at this time.” (R. 4-8)
Officer Cochran was then cross examined by appellant’s counsel. An unidentified anonymous source stated that the appellant’s brother, Steve Cumbie, and Donnie Chastang had, within the past 24 hours, returned from Miami, Florida with a large quantity of cocaine. Steve Cumbie is not the defendant, nor was Donnie Chastang. An anonymous source had indicated that these two people had been to Miami, Florida and had returned with the cocaine in question. After further examining the witness as to the basis of his knowledge, and as to the basis of the anonymous sources, the officer stated that he had received information that all three of the suspects were drug violators in the Mobile area and were the topic of at least five anonymous tips to the police department narcotics section. The officer further stated, on cross examination, that one of his informants had told him of purchasing controlled substances from both Robert and Steve Cum-bie and had been in Robert’s house and seen the controlled substances there. He indicated he had given this information to Judge Johnstone.
Upon being asked about the anonymous tips, he stated that these were from people who worked with the police department as “crimestoppers”. With reference to the basis of knowledge, the record discloses the following:
“Q. And then thirdly you say you had a total of five tips altogether related to Robert Cumbie that had been received anonymously. You said three were cri-mestoppers and two that were just made to where, the narcotics office?
“A. That I received in there by phone myself.
“Q. And finally you said you had a confidential informant who you’ve already testified to was reliable. You had used him before resulting in arrests. And he told you that he had in fact purchased cocaine and seen cocaine at Robert Cum-bie’s residence.
“MR. BYRD: Object, Your Honor.
“Q. I’m sorry. Purchased controlled substances and seeing controlled substances stored there.
“A. That is correct.
“MR. JORDAN: That’s all.” (R. 19)
Following further direct and cross examination, the trial court denied the appellant’s motion to suppress. (R. 22). The district attorney then offered the affidavit and warrant as State’s Exhibit 1 which was admitted. (R. 22). Record 23 and 24 then read as follows:
*1389 “MR. BYRD: Your Honor, we would object to it on the grounds as stated in our motion to suppress and the fact that it was improperly issued and executed.
“THE COURT: I give you an exception on all previously stated grounds. Overrule. Mark it in.
“(State’s Exhibit Number 1 was marked into evidence.)
“MR. BYRD: In light of the testimony this morning and the rulings of Your Honor, the defendant with leave of court would like to maintain his plea of not guilty but stipulate a prima facie case and have preserved for review the legal rulings since I believe those are the only true issues in the case.
“THE COURT: All right. So the defendant stipulates to a prima facie case. Does the defendant have anything to present?
“MR. BYRD: No, sir. We — if Your Honor would—
“THE COURT: Got a prima facie case for possession of marijuana and cocaine?
“MR. BYRD: Yes, sir, as charged in the indictment in both cases. We believe Mrs. Bryant would testify that there was .8 grams of cocaine and one and three-quarters pounds of marijuana. And I have no questions about her qualifications or expertise.
“THE COURT: All right. Robert Cum-bie, will you stand up, please. The Court adjuges you to be guilty of possession of cocaine and marijuana and directs that a presentence investigation be conducted by the State Boards of Pardon and Parole, returnable — I’m going to let this be returnable before Judge McDermott and I’ll have him give you a date,” (R. 28-24)
In this cause, as indeed with all others which come before the judges on this court, it is our purpose to issue a succinct statement of the facts as opposed to quoting at length from the record because of the problems this entails in the length of appellate opinions. However, we have made an exception as hereinabove set forth because of the motion which was filed in this court by appellant’s counsel.
We reiterate and reaffirm our views heretofore expressed on November 24, 1987, determining that there was sufficient information placed before Judge Johnstone to authorize the issuance of the search warrant and that the trial judge properly determined that there had been a sufficient case made to show the basis of the issuance of the warrant and its validity. We reaffirm these determinations.
With reference to the execution of the warrant, there is a serious question in the minds of the members of this court as to whether or not the appellant’s counsel has properly preserved an issue as to the execution of same. However, presupposing that there was a sufficient objection made under his motion to suppress (R. 23), we reaffirm our determination that the testimony from Officer Cochran showed that a number of officers was present and participated in the search and arrest of this appellant on the date in question. See specifically R. 7, which is heretofore quoted.
Under the authorities set forth in this court’s opinion of November 24,1987, Issue II, we reaffirm our determination that the search warrant was properly executed.
MOTION DENIED; OPINION EXTENDED; APPLICATION OVERRULED.
All the Judges concur.